Matter of J.G. v B.G. (2005 NY Slip Op 51413(U))

[*1]

Matter of J.G. v B.G.

2005 NY Slip Op 51413(U)

Decided on August 31, 2005

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 31, 2005

Family Court, Nassau County
In the Matter of C.G., Petitioner
-against-
J.G., Respondent.
xxx

Richard S. Lawrence, J.
This is a visitation matter brought by the Father in the Supreme Court, Nassau County, before Justice Robert A. Ross for visitation with the parties' two minor children, Adam G., born May 8, 1992 and Brian G., born April 6, 1996, praying for such visita-tion as this Court may direct; for appointment of a Law Guardian; for removal to the Supreme Court from the Nassau County Family Court a then pending matter brought by the Mother to terminate the paternal Grandmother's visitation rights with the children; for a stay of the Family Court's hearing regarding the Grandmother's matter; and together with such further and different relief as the Court may deem appropriate.
The Mother opposes the application and cross-moves to remove the Father's order to show cause to the Nassau County Family Court,
and specifically to be heard before this Part due to the fact that "Judge Richard A. [sic] Lawrence, who has previously presided over proceedings between these parties and is intimately familiar with the parties [and] the history of this matter," should be the proper venue to decide the instant application by the Father; denying the Father "any access or communication" with the children in accordance with an order of protection previously issued by the Suffolk County Criminal Court on August 14, 2000 and in accordance
with the Father's conditions of parole set forth in his release to parole supervision dated March 9, 2004; awarding the Mother sanc-tions and counsel fees against the Father "for having brought a frivolous, baseless and otherwise meritless application," and for such additional relief as the Court may deem appropriate. The Father has submitted no opposition to the cross-motion.
On January 26, 2005, Justice Ross issued his removal order and granted so much of the Mother's application which requests that the pending Supreme Court matter be transferred to this Part. Justice Ross states in his order that the parties' Judgment of Divorce specifically provides that the Family Court shall have concurrent jurisdiction with the Supreme Court regarding matters such as this,
and that pursuant to Family Court Act §652(a) the Family Court may hear such matters as were presently before Justice Ross. Accordingly, the Supreme Court referred both the motion and cross-
motion to this Part; however, due to a delay in having the motion papers transferred to the Family Court, this matter did not appear upon this Court's calendar for several months. Thereafter, and by interim decision and order, this Court appointed as Law Guardian William A. Sheeckutz, Esq., who had represented the children in the
same capacity in the Grandmother's visitation matter, C.G. v J.G. Mr. Sheeckutz was appointed in that capacity due to the untimely death of the long-standing prior Law Guardian, Stephen A. Moser, Esq.
This Court's interim decision and order directed service by the parties upon the Law Guardian of all of the papers previously submitted to Justice Ross, and further directed that a full copy of Judge Farneti's order of protection against the Father, in the County Court matter, and a complete copy of the conditions of parole, be furnished this Court (only partial copies were attached to the motion papers before Justice Ross). This Court further directed that the Law Guardian timely submit his affirmation.
Thereafter, the Law Guardian filed his affirmation, which reviewed DRL §240 and stated that he had interviewed the children, who each "communicated a willingness to have contact with their father either by means of a therapeutic/supervised visitation or limited phone contact with a cell phone. No fear of the father was expressed by either child." The Law Guardian recommends that the Court "implement a process for the children to have limited contact with the children [sic - should read "Father"] as may be approved
by his parole officer." That affirmation attached a copy of a second decision of Justice Ross, also dated January 26, 2005, allowing counsel for the Father to be relieved as counsel of record. Accordingly, the Father now proceeds pro se. This Court has no record of the Father's current address, but a copy of this decision and order will be mailed to him at the address given in the Law Guardian's affirmation of service.
Regarding that portion of the Father's application to consoli-date the then pending visitation matter before Justice Ross with the then pending visitation matter with the paternal Grandmother pending in this Court (with the removal of the Grandmother's case to the Supreme Court), that portion of the relief sought is denied as moot. Justice Ross has removed his matter to this Part so that there can be no transfer of the Grandmother's matter to the Supreme Court; and by order of this Court dated January 19, 2005, the visitation matter between the Grandmother, C.G., and the Mother, J.G., was settled. (These two matters appear at the beginning of this decision and order as the second and fourth captioned matters.)
This Court, to use the Mother's phrase, is "intimately" familiar with these parties, starting in the Fall of 1997. From
[*2]
that date until the Fall of 1999, these parties appeared before this Court on at least 21 occasions. The parties had 3 separate hearings from 1997 through December of 1998, involving a whole host of family offense petitions and cross-petitions, which resulted in various orders of protection against each of these parties. At virtually all of the hearings, this Court has stated that it is this Court's firm belief that these parties must be kept apart for their own good and for the safety of the parties. This Court further stressed its firm belief that these parties could not live under the same roof, and that they would not live under the same roof. This Court further found that on various occasions the allegations of one party against the other have been proven to this Court, including certain abhorrent behavior by the Father against the Mother, as well as certain inexcusable behavior by the Mother against the Father. This Court does not claim to be clairvoyant, but this Court's comments unfortunately proved to be horribly true.
One of the orders referred to above, after a hearing, was issued on August 21, 1998, for a one year period of time (in accor-
dance with the statute then in effect, Family Court Act §842, which allowed for final orders of protection to be for a maximum of one
year, absent a finding of aggravating circumstances). That order was in favor of the Mother and against the Father, and included a stay away from the former marital home, a stay away from the Mother wherever she may be (except for necessary appearances regarding the parties' pending matrimonial matter, the children's school activi-ties and any other organized extra-curricular activities of the children), a refrain from criminal conduct by the Father against the Mother, and an additional provision that "This order may be modified by an order of the Supreme Court."
Approximately one year thereafter, the Mother filed a petition to extend the existing final order of protection against the Father, in accordance with FCA §842. In a case of first impression, this Court issued a new order of protection in favor of the Mother and against the Father, with the exact same terms and conditions of the prior one, thereby in effect "extending" the prior order, without a hearing, by decision dated October 18, 1999, which order was valid for an additional year. This Court found that "special circumstances" existed in accordance with FCA §842, and although this Court could find no authority or precedent regarding such "special circumstances," this Court [*3]reviewed the statute, the
extensive history of these parties before this Court and this Court's familiarity with the parties. Although there are no cases directly in point regarding the question whether or not a hearing must be held, the Court cited two analogous cases where evidentiary hearings were not required and where the Court possessed sufficient information to render its determination without such hearing. J.G. v B.G., NYLJ November 18, 1999, p. 36, col. 3; and The Attorney of Nassau County, November 1999, p. 5, col. 1.
The Father submits as his Exhibit A a copy of the Judgment of Divorce dated July 27, 2001, and submits as his Exhibit B a copy of the transcript of the proceedings of October 24, 2000 before the
Supreme Court, regarding (among other things) custody and visitation whereby custody was given to the Mother and whereby, in the Father's words (paragraph 6 of his moving papers), "the parties expressly contemplated that visitation between [the Father] and his two beloved sons would resume at an appropriate time in the future."
In early February 2000, the Father was arrested, apparently for attempted murder, when he hired a "hit man" to kill the Mother (and his soon to be ex-wife). The hit man was or became a police
informant, and the murder or attempted murder never took place. The Father admits that he pled guilty to criminal solicitation in the second degree and conspiracy in the second degree (this Court notes that these criminal acts occurred while this Court's "extended" order of protection was still in effect) and was sentenced on August 14, 2000 to an indeterminate sentence of two to six years, such sentence to start immediately. The settlement was had before Judge Joseph Farneti of the Suffolk County Court and as part of that proceeding an order of protection was issued by Judge Farneti against the Father which included a stay away from the Mother, both children, and the Mother's parents, together with their homes, school, businesses, and places of employment; a refrain from
criminal activity against all of those parties and no telephone [*4]contact between the Father and all those parties. The order is in effect until August 14, 2011; however, it is "subject to the order of the Nassau County Supreme Court or any Court of competent jurisdiction concerning custody of the children of J.G. and the Defendant."
This Court also has throughly reviewed the Certificate of Release to Parole Supervision dated March 9, 2004 and in effect
until May 25, 2006, pursuant to which the Father, on his release from prison, was released to parole supervision. Included as a special condition of that parole supervision is the following: "I will not associate in any way or communicate by any means with J.G., Adam G., G.B. & E.B. without the permission of the parole officer." Following that special condition is another special condition which reads, "I will not associate in any way or communicate by any means with Brian G. without the permission of the parole officer." Adam G. is now 15 years of age, and Brian G. is now 9 years of age. It should be noted that the criminal case against the Father was a State case and that the Father is currently under the supervision of the State of New York, Division of Parole.
 APPLICABLE LAW
The initial inquiry this Court must make is whether the Father has shown changed circumstances or not. If he has in fact proven changed circumstances, then, and only then, can this Court address the best interests of the children. The law in this State is that the "change of circumstances," which is routinely applied to a
modification of a custody order, likewise must be applied to a
visitation matter. Engwer v Engwer, 307 AD2d 504 (3d Dept 2003) and Mack v Grizoffi, 13 AD3d 912 (3d Dept 2004). The Court finds that the Father has met his burden as to a change in circumstances.
One of the other factors which this Court is obligated to consider is set forth in Domestic Relations Law §240(1)(a) which states in applicable part:
Where either party to an action concerning
custody of or a right to visitation with a
[*5]
child alleges in a sworn petition or com-
plaint or sworn answer, cross-petition,
counter-claim or other sworn responsive plead-
ing that the other party has committed an act
of domestic violence against the party making
the allegation or a family or household member
of either party, as such family or household
member is defined in article eight of the family
court act, and such allegations are proven by
a preponderance of the evidence, the court must
consider the effect of such domestic violence
upon the best interests of the child, together
with such other facts and circumstances as the
court deems relevant in making direction pur-
suant to this section.
In any custody matter, it is incumbent upon the trier of the facts to consider any alleged acts of domestic violence committed by one parent against the other, and the failure to do so generally is reversible error. Finkbeiner v Finkbeiner, 270 AD2d 417 (2d
Dept 2000) and Samala v Samala, 309 AD2d 798 (2d Dept 2003). Even though these two cases deal with an issue of custody, nevertheless, they are equally applicable to visitation matters. See Engwer v Engwer, supra and Mack v Grizoffi, supra.
In addition, the Court's consideration of domestic violence must be a searching one. See, for example, Wissink v Wissink, 301
AD2d 36 (2d Dept 2002). In that case, the Second Department stated at page 39 that "the Court must consider the effect of such domes-tic violence upon the best interest of the child, together with other factors and circumstances as the court deems relevant in making an award of custody."
As set forth above, this Court previously issued an order of protection in favor of the Mother and against the Father on August
21, 1998 after a hearing, and thereafter found "special circum-
stances" and issued a new order without a hearing for an additional
year. In addition, the Father admittedly pled guilty to criminal solicitation in thesecond degree (Penal Law §100.10, a class D Felony) and conspiracy in the second degree (Penal Law §105.15, a class B Felony) and has recently completed an indeterminate [*6]sentence of 2 to 6 years.
The Court notes that the Father is being disingenuous with this Court. He states in paragraph 9 of is supporting affidavit, "I was arrested and charged with Criminal Solicitation in the Second Degree and Conspiracy in the Second Degree." From the information now before this Court, although what the Father states is apparently true, he fails to mention that the original and "top" criminal count was apparently attempted murder. It appears to this Court that the Father still is not confronting what he did nor admitting to the devastation he has caused his wife, the two boys and the entire family unit.
It is also quite apparent from the Mother's cross-moving papers that she remains in extreme fear for her life and that she has no question whatsoever that should her former husband have any access to her or the children, that her life will again be in jeopardy. Although the standard this Court must apply is the best interests of the children, such a standard must take into account the Father's criminal conviction, domestic violence and DRL §240(1)(a).
 The law is that this Court's decision cannot be based solely upon the wishes of the children. Eschbach v Eschbach, 56 NY2d 167
(1982); and Matter of Christopher D. Gonzalez, 15 AD3d 481 (2d Dept 2005). All things being equal, the non-custodial parent is enti-tled to reasonable visitation, and a "denial of those rights is so drastic it must be based upon substantial evidence that visitation would be detrimental to the welfare of the child." In the Matter of Erik L. v Dorothy L., 130 AD2d 660-661 (2d Dept 1987). However, the wishes of the children, especially children of the age of the older of the parties' children here, should be given some weight. Sturm v Lyding, 96 AD2d 731 (4th Dept 1983); Mahler v Mahler, 72 AD2d 739 (2d Dept 1979); and In the Matter of Erik L., supra.
Although the Law Guardian expresses the children's wishes, and also his own recommendation that there be therapeutic or super-
vised visitation or limited telephone contact by a cell phone, nevertheless, the Law Guardian's recommendation is not determina-[*7]tive. Sienkwicz v Sienkwicz, dec. February 23, 2001 (Family Court of New York, Nassau County, Lawrence, J.), aff'd 298 AD2d 396 (2d Dept 2002), leave to appeal den'd 99 NY2d 503 (2002). In the matter at bar, the question of a change in circumstances is virtually a given, as the Father has had virtually no contact with his children for several years and has just now
been released from incarceration. It is well-settled law in this state that, in an award of custody (or visitation, see Engwer v Engwer, supra and Mack v Grizoffi, supra), the Court must determine what is in the children's best interests, from a totality of the circumstances; there is no one factor, in most cases, which is determinative in making such an award. Eschbach v Eschbach, supra, and Keating v Keating, 147 AD2d 675 (2d Dept 1989), appeal dismissed, 74 NY2d 791 (1989).
Another consideration is the relative fitness of each of the parents and the length of time that the current arrangement has been in effect. Matter of Nehra v Uhlar, 43 NY2d 242 (1977). This court notes that a parent who contracted to have the other parent murdered, is anything but a "fit" parent. 
One of the leading cases in this area is Krebsbach v Gallagher, 181 AD2d 363 (2d Dept 1992), appeal denied 81 NY2d 701 (1992); and see also Eschbach v Eschbach, supra; Ring v Ring, 15 AD3d 406 (2d Dept 2005) and Vann v Vann, 14 AD3d 710 (2d Dept 2005). All of these cases stress that one of the important elements for the Court's consideration is the length of time the present custody (and visitation-see Engwer v Engwer, supra and Mack
v Grizoffi, supra) arrangement has been in effect. In the matter at bar, the Father has had no visitation for approximately 5 years, all due to his own actions.
Although it is well-settled law that a non-custodial parent should have a reasonable right of visitation, that right may be
denied upon "substantial evidence" or upon "compelling evidence," that such visitation would be detrimental to the child's welfare,
and where visitation would affect the child's emotional well-being. See MacEwen v MacEwen, 214 AD2d 572 (2d Dept 1995), where the trial court's denial of visitation was affirmed, where the record showed an in camera interview with the child, testimony [*8]from various
witnesses, and where the determination had a sound basis in the record. Such "substantial" or "compelling" evidence is certainly present in this case at bar.
Regarding whether the Father is entitled to a hearing, this Court holds that he is not. As set forth above, this Court is "intimately" familiar with these parties, having held 3 separate hearings regarding a whole host of family offense petitions and cross-petitions, with respect to which the parties appeared before this Court on at least 21 occasions. In addition, this Court
"extended" the Mother's prior order of protection, without a hearing, for an additional year. J.G. v B.G., supra. Lastly, the facts herein are not in dispute.
It has been held that the Court need not grant a hearing where the moving party has failed to make a sufficient evidentiary showing to warrant such a hearing, and this is particularly so where the Family Court has familiarity with the case. Matter of Burford v Alzamora, 289 AD2d 236 (2d Dept 2001) and Matter of Reese v Jones, 279 AD2d 939 (3d Dept 2001). See also Milhollen v Voepel, dec. October 14, 1998 (Family Court of New York, Nassau County, Lawrence, J.), aff'd 270 AD2d 422 (2d Dept 2000) and Smith v Molody-Smith, 307 AD2d 364 (2d Dept 2003).
This Court has researched cases wherein a parent has committed a serious crime against the custodial parent, and where the offend-ing party has applied for custody. In a matter where the father had assaulted his current wife, and where the prior wife, who was the mother of the movant's children, wished to restrict visitation, the Family Court properly limited the father's visitation until he completed a family therapeutic program. In Irwin v Schmidt, 236 AD2d 401 (2d Dept 1997), appeal den'd 89 NY2d 815 (1997), the Court
stated at page 402: "Notably, evidence of the father's acts of domestic violence against his current wife demonstrated that he possesses a character which is ill-suited to the difficult task of providing his young children with moral and intellectual guidance." The Court restricted his visitation to the New York metropolitan area only or in his current wife's presence until he [*9]completed a family therapy program.
In a matter where the Court found that the father had committed serious domestic violence against the children's mother, and where the father did not attend his mandated weekly mental health counseling sessions, the Court correctly denied all visitation to the father. Stitzel v Brown, 1 AD3d 826 (3d Dept 2003).
In a matter where the husband was convicted of 3 counts of criminal contempt in the third degree, criminal trespass in the second degree and criminal contempt in the second degree, from an incident whereby the father entered the mother's apartment through a window and threatened her, thereby violating an order of pro-tection, and later threatened to shoot her, the Court correctly denied all visitation to the father, and held that a hearing was unnecessary. Beverly v Bredice, 299 AD2d 747 (3d Dept 2002).
In Moses v Rachal S., 273 AD2d 928 (4th Dept 2000), the father was sentenced for the attempted murder of the mother. The Court denied all visitation. Likewise, in Russo v Russo, 282 AD2d 610 (2d Dept 2001), the father was convicted of attempted murder in the second degree, and all visitation was properly denied; the Appellate Court specifically cited DCA §240(1)(a).
In Ward v Jones, 303 AD2d 844 (3d Dept 2003), the father was convicted of criminal possession of a weapon in the first degree, stemming from his efforts to have a pipe bomb placed near the mother's vehicle in an effort to kill her. Visitation was properly denied as not in the children's best interests.
In a case where the father was convicted of assault in the second degree, criminal possession of a weapon in the third degree and unlawful imprisonment in the second degree, as a result of acts of domestic violence against his most recent live-in girlfriend (not the mother), the Court correctly modified visitation by terminating all contact between the father and the child. Trombley v Trombley, 301 AD2d 890 (3d Dept 2003). In the Matter of Mohammed v Cortland County Department of Social Services, 186 AD2d 908 (3d Dept 1992), appeal den'd 81 NY2d 706 (1993), the Court stated at
page 909: "While this court is sympathetic to [the father's] sincere desire to have contact with his son, Family Court was correct in confining its consideration to what is best for the [*10]child and not simply to what might be best for the parent... [W]e find no reason to disturb Family Court's ruling." Likewise, in Hatsell v Hatsell, 249 AD2d 853 (3d Dept 1998), the father was denied all visitation, without a hearing, due to his attempted murder of the mother.
Finally, in an analogous matter, where the issue was one of equitable distribution, the husband contracted for the wife's murder, just as in the case at bar. The Court held that in the circumstances, the wife was entitled to approximately 95.5% of the
marital estate. Havell v Islam, 301 AD2d 339 (1st Dept 2002), reargument den'd 2003 NY App Div Lexis 2561 (1st Dept 2003), appeal den'd 100 NY2d 505 (2003).
The Father relies upon Wise v DelToro, 122 AD2d 714 (1st Dept 1986) for the proposition that a father who was guilty of attempted murder is still entitled to visitation. However, the intended victim there was not the children's mother, but a third person. Those facts are far from those at bar. The other cases cited by
the Father are clearly distinguishable from the matter at bar.
Based upon the applicable case law as set forth above, this Court finds by a fair preponderance of the credible evidence that the best interests of the children require that the Father not be entitled to visitation with either or both of the parties' children, nor is the Father entitled to a hearing on this question, in the circumstances.
The Father attempted to have the Mother, his then wife and the Mother of his children, killed in a contract murder. This Court can think of no greater hurt (short of the murder itself) to one's children, than to attempt to inflict this upon them. A Father who attempts this certainly cannot have their best interests at heart - only his own selfish ends.
However, and even aside from the applicable case law and statutes, this Court is precluded from granting any visitation to the Father on a completely independent basis. The Suffolk County Court, by Hon. Joseph Farneti, previously issued an order of pro-tection dated August 14, 2000, as part of the sentencing on the Father's criminal case, which included a stay away from the Mother, both children and the Mother's parents. That order "shall remain
[*11]
in effect until August 14, 2011," and further states that it is "subject to the order of the Nassau County Supreme Court or any Court of competent jurisdiction concerning custody of the children of J.G. and the Defendant (emphasis supplied)." Accordingly, this Court is precluded from granting the Father any visitation whatsoever, as Judge Farneti's order addresses only the issue of custody. This Court cannot "read in" any other terms or conditions into Judge Farneti's order, which terms do not appear on its face. Since that order only deals with custody and does not mention visitation, the Father is precluded from any visitation whatsoever. This Court is further aware that even if visitation were allowed, that it is still subject to permission of the Parole Board.
Accordingly, each and every part of the Father's instant motion is denied; and so much of the Mother's instant notice of cross-motion as prays for a denial of any access or communication with the children is granted; and each and every other part of the Mother's notice of cross-motion is denied.
This constitutes the Decision and Order of the Court.
Dated: Westbury, New York
 August 31, 2005